## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-613

**TERRANCE POLK**

**VERSUS**

**THE CITY OF ALEXANDRIA, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 269,654
HONORABLE PATRICIA KOCH, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## VAN H. KYZAR
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Van H. Kyzar, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**AFFIRMED.**

**Willie G. Johnson, Jr.**
**Sophia Riley**
**P. O. Box 84509**
**Baton Rouge, LA 70884**
**(225) 717-7070**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Terrance Polk**

**Joshua J. Dara, Jr.**
**Morgan R. Briggs**
**Connor Headrick**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**The City of Alexandria**
**Mayor Jeffery W. Hall**
**Alexandria City Council**

**KYZAR, Judge.**

In this personal injury action involving a defective manhole cover, the plaintiff, Terrance Polk, appeals from the trial court judgment granting summary judgment in favor of the defendants, the City of Alexandria, Mayor Jeffrey W. Hall, and the Alexandria City Council, and dismissing his claims with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The incident leading to this litigation occurred on December 26, 2019, when Mr. Polk (referred to as "Plaintiff") stepped on a manhole cover located near Third and LeLand Streets in Alexandria, Louisiana. The cover broke as he stepped on it, causing his left leg to drop into the manhole. Plaintiff filed suit against the City of Alexandria ("the City"), its Mayor, Jeffrey W. Hall, and the City Council (referred to collectively as "Defendants"), seeking damages for injuries he suffered as a result of this accident. After answering the petition, Defendants filed a motion for summary judgment, arguing that they were entitled to judgment as Plaintiff could not prove that they had actual or constructive notice of the defective nature of the manhole cover prior to his accident. Plaintiff opposed the motion.

Following a November 14, 2022 hearing on the motion, the trial court took the matter under advisement. Thereafter, it rendered written reasons for judgment on November 17, 2022, finding that as Defendants had no actual or constructive notice that the manhole cover was defective prior to the accident, they were entitled to summary judgment. A written judgment in favor of Defendants, dismissing Plaintiff's claims against them with prejudice, was rendered by the trial court on January 9, 2023. This appeal followed wherein Plaintiff asserts that the trial court erred in granting Defendants' motion.

OPINION

"A party may move for a summary judgment for all or part of the relief for which he has prayed." La.Code Civ.P. art. 966(A)(1). "[S]ummary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Summary judgment procedure is now favored under our law, and the "procedure is designed to secure the just, speedy, and inexpensive determination of every action[]" and "shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). Louisiana Code of Civil Procedure Article 966(D)(1) provides the burden of proof in summary judgment proceedings, as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

"Summary judgment should be granted, if the parties have had the opportunity to conduct 'adequate discovery' and the evidence shows there is 'no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.' La.Code Civ.P. art. 966(A)(3)." *Laforge v. Golden Nugget Lake Charles, LLC*, 20-110, p. 3 (La.App. 3 Cir. 11/4/20), 307 So.3d 266, 269.

Appellate review of the grant of summary judgment is *de novo*, using the same criteria that governs the trial court's determination of whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). "Applicable, substantive law determines whether a fact is material on

2

summary judgment[.]" *Thomas v. Dalal*, 20-65, p. 5 (La.App. 3 Cir. 10/28/20), 306 So.3d 507, 511. Thus, we first look to the substantive law pertaining to the underlying claim to determine the propriety of the summary judgment granted therein.

This is a premises liability claim. Louisiana Civil Code Article 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." Louisiana Civil Code Article 2317.1 further provides, in part, that:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Additionally, La.R.S. 9:2800(A) states that "[a] public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody." As to public entities, however, the liability for buildings or things owned or within their control is limited to conditions within the knowledge of the entity:

> Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

La.R.S. 9:2800(C).

Constructive notice of a particular vice or defect in a thing owned or controlled by a public entity, which caused damage to another, "shall mean the existence of facts which infer actual knowledge." La.R.S. 9:2800(D).

[A] a public entity is deemed to have constructive notice of a defect when the defect has existed for such a period of time that the public entity should have discovered it by the exercise of ordinary care and had the opportunity to protect the public from injury by fixing the defect."

*Tanner v. Lafayette City-Par. Consol. Gov't*, 18-900, p. 3 (La.App. 3 Cir. 5/22/19), 273 So.3d 382, 384–85.

Moreover, "[t]he absence of a plan of inspection in no way shows or implies that an employee of the appropriate public entity has actual knowledge of a dangerous defect or condition." *Jones v. Hawkins*, 98-1259, 98-1288, p. 6 (La. 3/19/99), 731 So.2d 216, 220.

In order to prevail on a claim for damages resulting from a public entity's ownership or control of a defective thing pursuant to La.Civ.Code art. 2317 and La.R.S. 9:2800, a plaintiff must prove that:

(1) [defendant] had custody of the thing that caused the plaintiff's injuries or damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) [defendant] had actual or constructive knowledge of the defect and did not take corrective measures within a reasonable time; and (4) the defect in the thing was a cause-in-fact of the plaintiff's injuries.

*Hunter v. Lafayette Consol. Gov't*, 15-401, p. 4 (La.App. 3 Cir. 11/4/15), 177 So.3d 815, 819–20 (alterations in original).

"Failure to meet any one statutory element will defeat a negligence claim against a public entity." *Harris v. City of Shreveport*, 53,101, p. 6 (La.App. 2 Cir. 4/22/20), 295 So.3d 978, 982.

Defendants, in support of their motion for summary judgment, introduced excerpts from Plaintiff's deposition as well as the affidavits of James Graham and James Tolbert.

Plaintiff testified that the accident happened while he and his nephew were walking on the sidewalk at the location of the manhole cover prior to crossing the street. He stated that he was very familiar with this area as he typically crosses the

4

street at this location when going to a store located across the street. He said that he has walked over this manhole cover numerous times and has never seen any indications that it was defective. Plaintiff testified that he did not pay much attention to the manhole cover prior to the accident as he was focused on his nephew as they were preparing to cross the street. However, he said he had no reason to believe that the manhole cover was defective. He further stated that there were no signs around the manhole at the time of his accident.

Plaintiff claimed that Defendants should have been aware of the defective manhole cover because he had "seen workers working on that manhole in the area and it's just a bunch of problems. It's a flood area. We had floods and everything, and it's just one of them areas." However, when asked why he stepped on it if he knew that workers had worked on the manhole, he stated, "I didn't think nothing was wrong with it. If the workers were – I figured that the workers had worked on it and if they had any problems on it, they would have made adjustments to it."

Plaintiff testified that this manhole cover experienced a lot of traffic due to its location across from the mentioned store. He admitted that he has never heard any reports of the manhole cover breaking in the past, nor was he aware of the last time the cover was changed. He further stated that he was not aware of Defendants' inspection or maintenance policy as pertaining to manhole covers.

Mr. Graham, the Superintendent of Water Operations for the City, stated that Plaintiff reported his accident on December 26, 2019. He said that the manhole cover in question was installed in the early 1990s, and was a standard cover made of cast iron, which weighed approximately seventy pounds and required a special tool to lift it. Mr. Graham stated that the City had not received "any reports of any defect in the Cover before December 26, 2019[,]" and "[t]here were no documented complaints regarding the manhole Cover prior to the alleged accident[.]" He further stated that

5

the City had "no prior notice of any condition which was defective at the location of the Cover."

Mr. Tolbert, a Crew Supervisor for the City, in addition to reiterating Mr. Graham's statements, stated that he inspected the manhole cover on December 26, 2019, and "did not find any broken or cracked pieces of the Cover in the bottom of the manhole."

Based on the foregoing evidence, we find that Defendants have pointed out an absence of factual support establishing that they had actual or constructive notice that the manhole cover in question was defective. Accordingly, the burden shifts to Plaintiff to produce factual support establishing the existence of a genuine issue of material fact or that Defendants are not entitled to judgment as a matter of law.

In opposition to Defendants' motion, Plaintiff introduced excerpts from his deposition as well as that of Mr. Tolbert's deposition. The excerpt taken from Plaintiff's deposition concerned his statements that he had seen city workers working on the manhole a couple of times several days prior to his accident and that if there had been problems with the manhole cover, these workers should have corrected them.

Mr. Tolbert testified that when he arrived at the location of the manhole cover following the accident, the cover was on the manhole and that a small piece, shaped like a piece of pie, was missing from the cover. He stated that he did not know why the piece fell out or how long the cover had been broken. He said that he had not received any reports concerning the defective manhole cover prior to Plaintiff's accident. Mr. Tolbert could not recall the last time he was on Third and Leland Streets, although he stated that he passed this location every day on his way to work.

Mr. Tolbert testified that he was not aware of any manhole-cover inspection standards enforced by either the City or the State of Louisiana. However, he said

6

that he has received training on inspecting manhole covers through certifications he received through his work. He further stated that he has received no training from the City pertaining to the risks manhole covers pose to pedestrians or safety measures related to manhole covers and pedestrians. Mr. Tolbert testified that the City employs barricades and cones to alert any passerby regarding dangerous situations.

Based on the forgoing evidence, we find that Plaintiff has failed to introduce factual support establishing that Defendants had prior actual or constructive notice that the manhole cover in question was defective prior to his accident. Accordingly, we find that the trial court properly granted summary judgment in favor of Defendants and dismissed Plaintiff's claims against them with prejudice.

## DECREE

For the forgoing reasons, the judgment of the trial court, granting summary judgment in favor of the City of Alexandria, Mayor Jeffrey W. Hall, and the City Council and dismissing Terrance Polk's claims against them with prejudice, is affirmed. The costs of this appeal are assessed against Terrance Polk.

**AFFIRMED.**